# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ATHENA BITCOIN GLOBAL,<br><br>    Plaintiff,<br><br>v.<br><br>SHAUN OVERTON, JANE DOE-OVERTON, each individually and as members of the Conjugal Legal Partnership constituted by both; SHAUN OVERTON, in his personal and official capacity for ROI Developers, Inc.; ROI DEVELOPERS, INC. D/B/A ACCRUVIA; CORPORATIONS A, B and C; JOHN DOE; RACHEL DOE; INSURANCE COMPANIES X, Y, and Z,<br><br>    Defendants. | Case No. Case No. 1:22-cv-01291<br><br>Hon. Sara L. Ellis<br><br>Cook County Case No. 2022CH01062 |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION TO DISMISS ALL DEFENDANTS PURSUANT TO RULE 12(b)(2) AND TO DISMISS NEIDY OVERTON PURSUANT TO RULE 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

I. FACTUAL BACKGROUND ...................................................................................................1

   A. Allegations in the Complaint ........................................................................................ 1

   B. Additional Facts Relevant to Personal Jurisdiction ...................................................... 2

      1. No general ties to Illinois ........................................................................................ 2

      2. Defendants' dealings with "Athena" ...................................................................... 3

   C. Dissolution of the Athena-Accruvia Relationship ........................................................ 5

II. ARGUMENT ..........................................................................................................................5

   A. The Court Lacks Personal Jurisdiction Over Defendants. ............................................ 5

      1. There is no basis for general jurisdiction. .............................................................. 7

      2. No basis exists to exercise specific jurisdiction. .................................................... 7

   B. Athena Has Failed to State a Claim Upon Which Relief
Can Be Granted as to Neidy Overton………......................................................... 10

      1. Neidy is not subject to liability based on Athena's
allegations regarding a "conjugal legal partnership." .................................... 11

      2. Athena has not alleged facts alleging that Neidy was
a party to any contract or owed any duties to Plaintiff. ................................. 12

         a. Fiduciary Duty ............................................................................................ 12

         b. Breach of Contract ...................................................................................... 13

         c. Bad Faith .................................................................................................... 14

         d. Fraudulent Inducement to Enter Contract .................................................. 14

III. CONCLUSION ....................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abbott Lab'ys Inc. v. BioValve Techs., Inc.,* 543 F. Supp.2d 913 (N.D. Ill. 2008) ......................... 9

*Ameritech Servs., Inc. v. SCA Promotions, Inc.*, No. 99 C 4160,
  2000 WL 283098 (N.D. Ill. Mar. 6, 2000) ............................................................................ 8, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 10, 12

*Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013) .......................................................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 10

*Bennett v. Celtic Ins. Co.*, No. 1:20-CV-06172,
  2022 WL 767148 (N.D. Ill. Mar. 14, 2022) ............................................................................. 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................. 6

*Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769 (N.D. Ill. 2015) ................................... 12

*Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385 (7th Cir. 2020) ............................................... 6, 9

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................... 7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .................................... 7

*Gunn v. Cont'l Cas. Co.*, 968 F.3d 802 (7th Cir. 2020) ............................................................... 11

*Guzman v. Johnson*, 483 P.3d 531 (Nev. 2021) .......................................................................... 13

*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002) ............................................................... 5

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945) ............................................................................ 6, 9

*J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.,* 162 Ill. 2d 265 (1994) .............................. 14

*Kodak Ams., Ltd. v. Caribbean Photo & Imaging Co.*,
  242 F. Supp. 2d 117 (D.P.R. 2002) ........................................................................................ 11

*Lensel Lopez v. Cordero*, 659 F. Supp. 889 (D.P.R. 1987) ........................................................ 11

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ....................................................... 13

*Med. Indus. & Sci. Prods., Inc. v. Jordan Med. Grp.*,
  No. 21 C 0081, 2021 WL 4583654 (N.D. Ill. Mar. 16, 2021) .................................................. 8

*Mitchell v. Allstate Ins. Co.*, No. 19-CV-07899,
  2021 WL 3674609 (N.D. Ill. Aug. 19, 2021) ......................................................................... 15

*Morales-Figueroa v. Valdes,* Civ. No. 15-1365 (DRD),
  2016 WL 1171512 (D. P. R. Mar. 24, 2016) .......................................................................... 11

*N. Grain Mktg., LLC v. Greving*, 743 F.3d 487 (7th Cir. 2014) ............................................... 7, 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) .................................................................................................. 15
*Prime Leasing, Inc. v. Jackson-Madison Cty. Gen. Hosp. Dist.*,
  No. 91 C 5726, 1992 WL 80410 (N.D. Ill. Apr. 7, 1992) ............................................................ 9
*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003) ..................... 6, 8, 9
*Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759 (7th Cir. 2010) ....................................... 10, 13
*Rogers v. City of Hobart, Ind.*, 996 F.3d 812 (7th Cir. 2021) ........................................................ 7
*Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762 (N.D. Ill. 2021) ................................................ 14
*Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380 (5th Cir. 2007) ............................................... 13
*Sosa v. Onfido, Inc.*, 8 F.4th 631 (7th Cir. 2021) ......................................................................... 11
*Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910 (7th Cir. 2007) ........................ 10
*Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010) ...................................................................... 6
*United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041 (N.D. Ill. 2015) ......................................... 6
*United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009) ......................... 15
*Voelter v. Daimler Trucks N. Am., LLC*, 547 F. Supp. 3d 614 (W.D. Tex. 2021) ......................... 1
*Walden v. Fiore*, 571 U.S. 277 (2014) .......................................................................................... 6

**Statutes**

31 L.P.R.A. § 3551 ....................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................................... 15
Fed. R. Civ. P. 12(b)(2) ........................................................................................................... 1, 15
Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 10, 15

## INTRODUCTION

Plaintiff Athena Bitcoin Global ("Athena Global") brings claims against two Texas residents, Defendants Shaun Overton ("Shaun") and Neidy Overton ("Neidy"), and a Texas corporation, Defendant ROI Developers, Inc. d/b/a Accruvia ("Accruvia"), arising out of an attempted but unsuccessful business association that was conceived of, negotiated, and documented entirely in El Salvador. Other than the fact that Athena Global is based in Illinois, the Complaint contains no allegations tying Plaintiff's claims to Illinois. First, based on the attached declarations, Plaintiff cannot demonstrate a prima facie case for the exercise of personal jurisdiction over any Defendant, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2). Second, the Complaint does not allege any basis for claims against Neidy, whose only apparent connection to the events described in the Complaint is her marriage to Shaun, and as a result, the claims against Neidy should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## I. FACTUAL BACKGROUND

### A. Allegations in the Complaint

The Complaint alleges that Defendants are each residents and citizens of the State of Texas. Complaint, Doc. 1-2 ("Comp."), ¶¶ 4-6. Plaintiff alleges generally that Athena Global, Shaun, and Accruvia[1] entered into a term sheet in El Salvador that contemplated the acquisition of Accruvia by Athena Global and the employment of Shaun by Athena Global. Comp. ¶¶ 10-12, 21. Although the Complaint alleges that Shaun "began holding himself out as the 'CTO' of Athena," Comp. ¶ 13, the confidentiality agreement attached as Exhibit 2 to the Complaint, a certified translation of which is attached hereto as Exhibit A, reflects that, commencing on September 22, 2021, Shaun

---

[1] Throughout the Complaint, Plaintiff refers to both "ROI" and "Accruvia" as alternate entities, but "[u]nder Texas law, … the use of a fictitious name does not create a separate legal entity." *Voelter v. Daimler Trucks N. Am., LLC*, 547 F. Supp. 3d 614, 622 (W.D. Tex. 2021) (internal quotations and citations omitted). Thus, Defendants refer to the single legal entity "ROI Developers, Inc. d/b/a Accruvia" as "Accruvia."

1

reportedly held the position of CTO with Athena Holdings El Salvador, Sociedad Anónima de Capital Variable ("Athena El Salvador"). Ex. A, p. 1. Plaintiff alleges that Shaun and/or Accruvia "informed the Republic of El Salvador of purported Athena software problems that Defendants would help to fix, if the Republic agreed to contract with and pay Defendants." Comp. ¶ 15. The Complaint further alleges that Defendants prevented Athena Global from hiring the best personnel, and instead hired incompetent staff. Comp. ¶¶ 17-18.

Plaintiff asserts four causes of action. First, Plaintiff claims that "Overton, ROI and Accruvia" breached their alleged fiduciary duties. Comp. ¶¶ 19-28. Second, Plaintiff claims that "Mr. Overton, ROI, Accruvia and Athena entered into a Term Sheet agreement" and that Defendants breached the agreement. Comp. ¶¶ 29-33. Third, based upon the alleged contractual relationship entered into by "ROI, Accruvia and Mr. Overton," Plaintiff asserts they violated a duty of good faith and fair dealing. Comp. ¶¶ 34-39. Finally, Plaintiff alleges that Defendants "made the statements and representations in the Agreement" knowing them to be false, and Plaintiff asserts a claim for fraudulent inducement to enter contract. Comp. ¶¶ 40-44.

**B.** **Additional Facts Relevant to Personal Jurisdiction**

1. **No general ties to Illinois**

Shaun and Neidy (incorrectly sued as "Jane Doe-Overton") are married and live in Hurst, Texas. Declaration of Shaun Overton ("Shaun Dec."), attached hereto as Exhibit B, ¶ 2; Declaration of Neidy Overton ("Neidy Dec."), attached hereto as Exhibit C, ¶ 2. Shaun is the President of ROI Developers, Inc., which is a Texas corporation with its principal place of business in Hurst, Texas. Ex. B, Shaun Dec. ¶¶ 1, 3. While ROI Developers, Inc. does business as "Accruvia," that is an assumed name referring to the same entity. *Id.* ¶ 3. Neidy does not now and has never worked for Accruvia in any capacity. Ex. C, Neidy Dec. ¶ 5.

Neither Shaun nor Neidy owns or leases real estate in Illinois, nor does either maintain any banking or financial accounts in Illinois. Ex. B, Shaun Dec. ¶¶ 4-5; Ex. C, Neidy Dec. ¶¶ 3-4. Shaun has only been to Illinois twice. The first time was in 1998 when he was a high school student and attended a summer camp held at Northwestern University. Ex. B, Shaun Dec. ¶ 7. The second time was in 2016 when he was in transit through O'Hare International Airport on his way to a wedding in Wales. *Id*. Neidy has never been to Illinois. Ex. C, Neidy Dec. ¶ 6.

All of Accruvia's assets are located in Texas. Ex. B, Shaun Dec. ¶ 3. Accruvia does not own or lease any real estate in Illinois and maintains no banking or other financial accounts in Illinois. *Id*. ¶¶ 4-5. Accruvia has never had employees, contractors or agents in Illinois. *Id*. ¶ 6. Other than the work paid for by Athena Bitcoin, Inc., which was performed outside Illinois, Accruvia has never had a customer based in Illinois. *Id*. ¶ 18.

2.  **Defendants' dealings with "Athena"**

As a result of work that Accruvia was doing for the government of El Salvador, Shaun became aware of "Athena" and its CEO, Eric Gravengaard ("Gravengaard"). Ex. B, Shaun Dec. ¶ 8. While Athena Bitcoin Global ("Athena Global") brought this lawsuit, Gravengaard signed the term sheet (discussed *infra*) on behalf of an entity referred to as Athena Bitcoin Global, Inc. *Id*. Separate from that term sheet, the contracted work that Accruvia performed related to Athena was paid for by Athena Bitcoin, Inc. *Id*. For purposes of this Motion, Defendants refer to Athena Bitcoin Global (the Plaintiff), Athena Bitcoin Global, Inc. (the entity on the signature page of the Term Sheet), Athena Bitcoin, Inc. (the entity making payments to Accruvia), and Athena El Salvador collectively as "Athena" unless otherwise specified.

Shaun met Gravengaard briefly in Athena's offices in San Salvador, El Salvador, on September 20, 2021. Ex. B, Shaun Dec. ¶ 9. As mentioned, Accruvia was already working for the government of El Salvador as a contractor, as was Athena. *Id*. Gravengaard initiated the

3

discussions regarding Accruvia and Athena doing business together. *Id*. ¶ 10. At Gravengaard's request, Shaun went to Athena's San Salvador office on the morning of September 21, 2021, where he met Athena's President, Eddie Weinhaus. *Id*. Later in the evening of September 21, Shaun met Gravengaard by the pool of Hotel Barcelo in San Salvador to discuss Athena's proposal in more detail. *Id*. ¶ 11. They came to terms for a potential deal, which Shaun summarized in an email to Gravengaard the following morning, September 22, 2021. *Id*. Graveengard very quickly confirmed his understanding of the potential deal. *Id*. Around 5:00 p.m. on September 22, 2021, Gravengaard and Shaun signed a Term Sheet, a heavily redacted copy of which is attached to the Complaint as Exhibit 1. *Id*. ¶ 12. The Term Sheet was entirely negotiated and signed while they were in San Salvador. *Id*.

Shaun's communications with Athena were primarily with Gravengaard and mostly took place in person in San Salvador. *Id*. ¶ 15. Shaun participated in a couple of telephone conversations with Athena staff after the term sheet was signed, but he was either in San Salvador or in Texas during those conversations. *Id*. Shaun never had an in-person meeting in Illinois with Gravengaard, Weinhaus, or anyone else employed by Athena. *Id*. ¶ 13. Gravengaard, Shaun and their respective attorneys met twice after the Term Sheet was signed, both times in San Salvador. *Id*. ¶ 14.

The Term Sheet provided that Shaun would become an employee of Athena upon closing of the deal contemplated by the Term Sheet, but there was never a closing. *Id*. ¶ 19. Shaun never had a written employment agreement with Athena, although Athena was supposed to provide him with one. *Id*. Shaun was never paid a salary or wages by Athena. *Id*. Shaun never had any discussions with Gravengaard or anyone else at Athena regarding Shaun having an office in Illinois or doing work for Athena in Illinois. *Id*. ¶ 20.

4

All the work that Shaun personally performed for any Athena entity was paid for by Athena Bitcoin, Inc., and was done either in El Salvador or in Texas. *Id.* ¶ 16. The work related to Athena performed by other employees or contractors of Accruvia was done either in El Salvador or remotely from the employee's or contractor's personal work location. *Id.* ¶ 17. Those work locations were in Texas, the Dominican Republic, Greece, or states other than Illinois and countries other than the United States. *Id.* The portion of this work that was paid for was paid for by Athena Bitcoin, Inc. *Id.* Shaun assisted in Athena's hiring one employee, Andrew Chalk, who lived in Dallas and who worked on the project in El Salvador. *Id.* ¶ 21. Shaun recommended Chalk to Athena, but Athena had the final say. *Id.*

Neidy never met Gravengaard or anyone else at Athena other than former Accruvia employee Bailey Jarrell, who Neidy met before Jarrell started working for Athena. Ex. C, Neidy Dec. ¶ 8. She otherwise had no dealings with any Athena entity. *Id.* ¶ 7.

### C. Dissolution of the Athena-Accruvia Relationship

On November 1, 2021, Shaun met with Gravengaard in San Salvador. Ex. B, Shaun Dec. ¶ 22. He then returned to Texas, and again spoke with Gravengaard via Microsoft Teams on November 3, 2021. *Id.* At the end of that call, Gravengaard asked Shaun to resign. *Id.* That evening Shaun sent Gravengaard an email stating that Accruvia was terminating its relationship with Athena. *Id.*

## II. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Defendants.

In a diversity case such as this, the Court must apply the personal jurisdiction rules of the state in which it sits. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). "A court's exercise of personal jurisdiction may be limited by the applicable state statute or the federal Constitution; the Illinois long-arm statute permits the exercise of jurisdiction to the full extent

5

permitted by the Fourteenth Amendment's Due Process Clause, … so here the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (internal citation omitted). "Thus, the question we must answer is whether the exercise of personal jurisdiction over the defendants 'comports with the limits imposed by federal due process.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945)). Such jurisdiction can be either general or specific, *see Bennett v. Celtic Ins. Co.*, No. 1:20-CV-06172, 2022 WL 767148, at *2 (N.D. Ill. Mar. 14, 2022), and as demonstrated below, neither is present here.

While the Complaint need not allege facts demonstrating a basis for personal jurisdiction, "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry*, 949 F.3d at 392 (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). When no evidentiary hearing is held and the court determines the motion to dismiss on the papers, the plaintiff has the burden of making a prima facie showing of jurisdiction. *Curry*, 949 F.3d at 392-93. "When Defendant challenges by declaration a fact alleged in the Complaint, Plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015). And while factual disputes must be resolved in the plaintiff's favor, unrefuted facts in affidavits submitted by the defendant are taken as true. *Id.*

### 1. There is no basis for general jurisdiction.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (recognizing individual's domicile and corporation's place of incorporation and principal place of business as "paradig[m]" bases for the exercise of general jurisdiction). The Complaint and the affidavits submitted by Defendants confirm that Shaun and Neidy are domiciled in Texas and that Accruvia's place of incorporation and principal place of business are likewise Texas. Compl. ¶¶ 4, 6; Ex. B, Shaun Dec. ¶¶ 2-3; Ex. C, Neidy Dec. ¶ 2. Shaun's Declaration further dispels any contention that Accruvia's essentially non-existent contacts with Illinois create the "exceptional case" where general jurisdiction over a corporation can exist in a forum other than its formal place of incorporation or principal place of business. *See Daimler AG*, 571 U.S. at 139 n.19; Ex. B, Shaun Dec. ¶¶ 3-6, 18. No general jurisdiction over Defendants exists here.

### 2. No basis exists to exercise specific jurisdiction.

"[S]pecific personal jurisdiction requires that (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart, Ind.*, 996 F.3d 812, 819 (7th Cir. 2021); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Athena cannot show, and Defendants have specifically negated, the notion that Defendants directed any activity at Illinois. Instead, Athena has alleged that Defendants caused problems related to the services Athena was providing to the Republic of El Salvador (Comp. ¶ 16) and that the agreement that

7

supposedly underlies Athena's claims was executed in El Salvador (*id*. ¶ 21). Shaun has affirmed that the Term Sheet was initiated by Athena's CEO in El Salvador, was negotiated entirely in El Salvador, and was executed in El Salvador. Ex. B, Shaun Dec. ¶¶ 10-12. Shaun also confirmed that the work performed by Accruvia was done either in El Salvador or in remote working locations, none of which were in Illinois. *Id*. ¶¶ 16-17. The only allegation in the Complaint that even mentions Illinois is the assertion that, *in the future*, Shaun was going to be an employee of Athena, headquartered in Illinois. Comp. ¶ 12. The exhibits attached to the Complaint clarify that Shaun was promised employment upon closing of the transaction contemplated by the Term Sheet, which did not occur (Comp. Ex. 1; Ex. B, Shaun Dec. ¶ 19), and that, Shaun was, at most, the CTO of Athena El Salvador (Ex. A, p. 1). Defendants did not direct activity at Illinois, and Athena's claims certainly did not arise out of any such contacts with Illinois.

While Shaun and Accruvia entered into the Term Sheet with an Illinois entity and that Term Sheet contemplated Athena would acquire Accruvia (a Texas company) and Shaun would in the future become an employee of Athena, there was no discussion of Shaun working in Illinois. Ex. B, Shaun Dec. ¶ 20. Moreover, "[w]ith respect to contract disputes, 'contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum.'" *N. Grain Mktg.*, 743 F.3d at 493 (quoting *Purdue Rsch.*, 338 F.3d at 781); *see also Med. Indus. & Sci. Prods., Inc. v. Jordan Med. Grp.*, No. 21 C 0081, 2021 WL 4583654, at *1 (N.D. Ill. Mar. 16, 2021) (non-resident "'does not subject itself to personal jurisdiction' merely by contracting with a party in the forum state") (quoting *Ameritech Servs., Inc. v. SCA Promotions, Inc.*, No. 99 C 4160, 2000 WL 283098, at *3 (N.D. Ill. Mar. 6, 2000)). Thus, courts consider factors including "who initiated the transaction, where the negotiations were conducted, where the parties

8

executed the contract, and where the defendant would have performed the contract." *Ameritech Servs.*, 2000 WL 283098, at *3.

In this case, the contract was initiated by Athena in El Salvador, was negotiated entirely in El Salvador, was executed in El Salvador, and would be performed by Accruvia and Shaun in Texas. Thus, there is no basis for the exercise of specific jurisdiction. *See also Abbott Lab'ys Inc. v. BioValve Techs., Inc.,* 543 F. Supp.2d 913, 920 (N.D. Ill. 2008) (defendant "not subject to personal jurisdiction in Illinois merely because it entered into a contract with an Illinois resident"); *Prime Leasing, Inc. v. Jackson-Madison Cty. Gen. Hosp. Dist.*, No. 91 C 5726, 1992 WL 80410, at *7 (N.D. Ill. Apr. 7, 1992) ("There is a distinction between the transaction of business *in* Illinois and the transaction of business *with* an Illinois resident.") (emphasis in original).

"In the final step of [the specific jurisdiction] inquiry, we must ensure that the district court's exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Curry*, 949 F.3d at 402 (quoting *Int'l Shoe*, 326 U.S. at 316). For this purpose, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies." *Curry*, 949 F.3d at 402 (quoting *Purdue Rsch.*, 338 F.3d at 781). Here, where the negotiations and execution of the Term Sheet occurred in El Salvador, where that Term Sheet called for the acquisition of a Texas entity and the contemplated employment of a Texas resident, Illinois lacks the requisite interest to satisfy even the most basic notion of fair play and substantial justice.

Thus, even as to Shaun and Accruvia, who at least had interactions with Athena related to the Term Sheet and business in El Salvador, there is no basis for the exercise of specific

9

jurisdiction. And this is even more evident with regard to Neidy, who not only has never been to Illinois, but has never worked for Accruvia or had any dealings with any Athena entity or personnel. Ex. C, Neidy Dec. ¶¶ 7-8.[2] Thus, it is clear that she has not directed any activity at the forum or purposefully availed herself of the benefits of Illinois. As demonstrated below, of course, Plaintiff has failed to state any claim against Neidy, but even if it had, no claim can arise out of her non-existent contacts with Illinois. There is no basis for specific jurisdiction over Neidy.

### B. Athena Has Failed to State a Claim Upon Which Relief Can Be Granted as to Neidy Overton.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the plaintiff is not required to set forth detailed factual allegations, he is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plaintiff must provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (internal quotations omitted). Moreover, a federal court sitting in diversity applies the choice of law rules of the forum state in determining what law applies to the substantive claims asserted in the action. *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007).

---

[2] As Neidy explains, she did know Bailey Jarrell prior to Jarrell becoming an Athena employee. Ex. C, Neidy Dec. ¶ 8. However, Neidy has had no contact with Jarrell since she became an Athena employee. *Id*.

        **1.     Neidy is not subject to liability based on Athena's allegations regarding a "conjugal legal partnership."**

Athena describes Neidy as a "member of the Conjugal Legal Partnership Constituted by [Shaun Overton and Jane Doe-Overton]" and alleges that she, together with Shaun Overton, "is responsible for the breach of fiduciary duties and tortious acts incurred by Mr. Overton while purporting to work as the Chief Technology Officer for Athena." Comp. ¶ 4. While the concept of a separate legal entity of a "conjugal legal partnership" has been recognized in certain civil codes,[3] *see, e.g.*, *Morales-Figueroa v. Valdes,* Civ. No. 15-1365 (DRD), 2016 WL 1171512, *5 (D. P. R. Mar. 24, 2016), the Complaint contains no factual allegations (nor could it) to support the application of any such civil code to the Overtons' marriage. While the State of Texas (where the Overtons are domiciled) is a community property state, its jurisprudence does not recognize a separate entity of a conjugal legal partnership. Moreover, even if the Complaint had included allegations regarding the existence of a conjugal legal partnership, those jurisdictions that recognize such an entity would not permit a claim against Neidy individually. *See, e.g.*, *Kodak Ams., Ltd. v. Caribbean Photo & Imaging Co.*, 242 F. Supp. 2d 117, 121 (D.P.R. 2002) (where wife did not sign or personally admit liability for debts, she was "not individually liable for the debts incurred"); *Lensel Lopez v. Cordero*, 659 F. Supp. 889, 891 (D.P.R. 1987) ("Although the wives have an interest in the end result of an action affecting the community property, they may not be held individually liable for the actions of their husbands.").

---

[3] For example, pursuant to the Civil Code of Puerto Rico, 31 L.P.R.A. § 3551, "[i]n the absence of contracts relating to property it shall be understood that the marriage has been contracted under the system of legal conjugal partnership."

### 2. Athena has not alleged facts alleging that Neidy was a party to any contract or owed any duties to Plaintiff.

In any future analysis of claims asserted by Athena against Accruvia and Shaun, a choice of law analysis may be required to determine the law that governs the specific claims. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) ("Under Illinois choice-of-law rules, forum law is applied 'unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply.'") (quoting *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)). The absence of allegations tying Neidy to any of the alleged misconduct in this case makes such a claim-specific choice-of-law analysis unnecessary in this case, because the Complaint fails at the most basic level to allege any connection between Athena and Neidy or any conduct on her part tied to Athena's claims.

#### a. Fiduciary Duty

As previously stated, the Complaint makes the conclusory assertion that Neidy, along with her husband, is "responsible for the breach of fiduciary duties and tortious acts incurred by Mr. Overton while purporting to work as the Chief Technology Officer for Athena." Comp. ¶ 4. But the Complaint is completely devoid of any allegation that Neidy owed Plaintiff a fiduciary duty or any facts to support the existence of such a duty. Indeed, in Count 1, Plaintiff alleges that "*Overton, ROI, and Accruvia* accepted a duty of loyalty to Athena upon Overton's advertising himself as CTO and purporting to use Accruvia and ROI with that title, which were under his sole control [sic]," that "*Overton, ROI and Accruvia* breached their duty of loyalty, and that it has suffered damages "as a direct and proximate result of *ROI, Accruvia and Overton's breaches of fiduciary duties* that it [sic] owed to Athena." *Id*. ¶¶ 22, 23, 27 (emphasis added). The absence of any allegations regarding duty or breach by Neidy does not satisfy the *Iqbal* threshold for stating a plausible claim for breach of fiduciary duty against Neidy. *See Chicago Title Ins. Co. v.*

12

*Sinikovic*, 125 F. Supp. 3d 769, 777 (N.D. Ill. 2015) (elements of claim under Illinois law include duty and breach); *see also Guzman v. Johnson*, 483 P.3d 531, 538 (Nev. 2021) (Nevada, Plaintiff's state of incorporation, also requires a showing of duty and breach.).

### b. Breach of Contract

As with its breach of fiduciary duty claim, Athena does not allege any contract with Neidy nor any facts alleging she breached any contract. In fact, the Complaint alleges a breach of the Term Sheet attached as Exhibit 1 to the Complaint and then alleges that "Mr. Overton, ROI, Accruvia and Athena entered into a Term Sheet agreement." Comp. ¶ 30. That allegation and the the agreement attached to the Complaint negates any suggestion that Neidy was a party to the contract on which Athena sues. The Term Sheet is signed by Eric Gravengaard on behalf of Athena Bitcoin Global, Inc. and Shaun Overton, on behalf of himself and Accruvia. Comp. Ex. 1. The absence of any allegation plausibly suggesting the existence of a valid and enforceable contract between plaintiff and defendant, and a breach of such contract, fails to state a claim. *See Reger Dev.*, 592 F.3d at 764; *see also Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (contract and breach are essential elements of claim under Texas law).

Nor does Athena's conclusory allegation that "Defendants" violated and repudiated that Agreement state a claim as to Neidy. Comp. ¶¶ 31, 32. Such conclusory allegations are not taken as true for purposes of a motion to dismiss. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth"). In context, of course, Athena's allegation plainly does not refer to Neidy. Moreover, "[l]iability is personal. An allegation that *someone* looted a corporation does not propound a plausible contention that *a particular person* did anything wrong. … Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A.*

13

*v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). And finally, the Complaint names Shaun and Accruvia – but not Neidy – as the direct and proximate cause of Athena's damages from the alleged breach of contract. Comp. ¶ 33. The Complaint does not state a breach of contract claim against Neidy.

### c. Bad Faith

Athena's claim for "bad faith" reiterates that there was a contractual relationship between Defendants Shaun Overton and Accruvia – but not Neidy – and that Shaun and Accruvia owed a duty to Athena. Comp. ¶ 35. But "[i]nstead of an independent source of liability, the implied covenant of good faith and fair dealing is merely a rule of construction that applies in the context of a breach-of-contract claim." *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 771 (N.D. Ill. 2021) (dismissing separately stated claim for breach of duty of good faith and fair dealing). Whatever its reach, however, the duty does not exist outside the context of a contract between the parties. *See J & B Steel Contractors*, *Inc. v. C. Iber & Sons, Inc.,* 162 Ill. 2d 265, 278 (1994) (duty implied in contracts). Thus, for the reasons discussed above, in the absence of allegations of a contract involving Neidy, the Complaint fails to state a claim against Neidy for "bad faith."

### d. Fraudulent Inducement to Enter Contract

As with its other claims premised on the Term Sheet, Athena alleges that "Defendants made false statements of material fact to Athena when it signed the Agreement" and that Defendants "made the statements and representations *in the Agreement*" with the knowledge that they were false. Comp. ¶¶ 41-42. Because, as demonstrated above, the Complaint lacks any factual allegations that Neidy made any statements or representations in the Term Sheet or had anything to do with its negotiation or execution, the Complaint does not allege facts sufficient to demonstrate that Neidy fraudulently induced Athena to enter into the Term Sheet. Indeed, because the fraudulent inducement claim sounds in fraud, it is subject to the heightened pleading

14

requirements of Rule 9(b). *See Mitchell v. Allstate Ins. Co.*, No. 19-CV-07899, 2021 WL 3674609, at *3 n.3 (N.D. Ill. Aug. 19, 2021) ("The Court applies the heightened pleading standard required by Fed. R. Civ. Pro. 9(b) to analyze fraudulent inducement."). Plaintiff's collective reference to "Defendants," while improper as a general matter, is particularly inappropriate under a heightened pleading standard where the Complaint contains no separate allegations of conduct by Neidy. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) ("plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud") (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).

### III. CONCLUSION

For the reasons stated above, the Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction over all Defendants. In addition, even if the Court had personal jurisdiction over Neidy Overton, the Complaint fails to state a claim for relief against Neidy, and she must be dismissed under Rule 12(b)(6).

Dated: March 24, 2022

Respectfully submitted:

/s/ Michael L. Rice
Holly A. Harrison
Katie J. Colopy
Michael L. Rice
HARRISON LAW LLC
141 W. Jackson Blvd., Suite 2055
Chicago, IL 60604
(t) (312) 638-8776
(f) (312) 638-8793
hollyharrison@hlawllc.com
katiecolopy@hlawllc.com
mikerice@hlawllc.com

**Attorneys for Defendants**
**Shaun Overton, Neidy Overton and ROI**
**Developers, Inc. d/b/a Accruvia**

15

**Certificate of Service**

The undersigned hereby certifies that, on March 24, 2022, I caused to be served a copy of the foregoing Memorandum of Law in Support of Opposed Motion to Dismiss All Defendants Pursuant to Rule 12(b)(2) and to Dismiss Neidy Overton Pursuant to Rule 12(b)(6) on the following counsel of record by email:

Ryan M. Cleys
115 East Irving Park Rd., #936
Streamwood, Illinois 60107
Rmcleys@gmail.com

/s/ Michael L. Rice