IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ATHENA BITCOIN GLOBAL,<br><br>　　Plaintiff,<br><br>v.<br><br>SHAUN OVERTON, JANE DOE-OVERTON, each individually and as members of the Conjugal Legal Partnership constituted by both; SHAUN OVERTON, in his personal and official capacity for ROI Developers, Inc.; ROI DEVELOPERS, INC. D/B/A ACCRUVIA; CORPORATIONS A, B and C; JOHN DOE; RACHEL DOE; INSURANCE COMPANIES X, Y, and Z,<br><br>　　Defendants. | Case No. Case No. 1:22-cv-01291<br><br>Hon. Sara L. Ellis<br><br>Cook County Case No. 2022CH01062 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COMPLAINT**

Defendants moved to dismiss the Complaint in this action because (1) this Court cannot properly exercise personal jurisdiction over any of them, and (2) even if there was a basis for personal jurisdiction, Plaintiff Athena Bitcoin Global ("Athena") made no effort to state a claim against Defendant Neidy Overton ("Neidy"). Athena's Memorandum of Law in Support of Response in Opposition to Motion to Dismiss (Doc. 20, "Opposition" or "Opp.")) fails to overcome these deficiencies. As a result, the Complaint should be dismissed against all Defendants for lack of personal jurisdiction or, in the alternative, dismissed as to Neidy for failure to state a claim.

I. **Plaintiff Has Failed To Meet Its Burden Of Establishing Personal Jurisdiction Over Any Of The Defendants.**

In their Opening Memorandum (Doc. 13), Defendants established a complete lack of contacts between Defendants Shaun Overton ("Shaun") and ROI Developers, Inc. d/b/a/ Accruvia

1

("Accruvia") and the State of Illinois other than the fact that a Term Sheet instigated, negotiated, and executed in El Salvador regarding the purchase of a Texas company was entered into between two Texas residents on the one hand (Shaun and Accruvia) and an Illinois resident (Athena) on the other. And Defendants established that Defendant Neidy does not even have that tenuous link to Illinois, having no business ties with Athena and no connection to Illinois whatsoever.

In its Opposition, Plaintiff attempts to meet its burden by relying (i) on the fact that Athena is an Illinois company, which allegedly suffered injury in Illinois and with whom Shaun and Accruvia entered into the Term Sheet, (ii) on the billing by Accruvia for services performed for "Athena," and (iii) on website testimonials Athena asserts are from Illinois residents[1] regarding the work of one of Accruvia's predecessor companies. As Defendants noted in their Opening Memorandum (Doc. 13, at 7), however, "[s]pecific jurisdiction requires that (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair dealing and substantial justice." *Rogers v. City of Hobart, Ind.*, 996 F.3d 812, 819 (7th Cir. 2021); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). None of the supposed connections between Shaun and Accruvia with Illinois supports the exercise of personal jurisdiction.

<u>First</u>, as pointed out in Defendants' Opening Memorandum (Doc. 13, at 8-9), merely contracting with an Illinois party does not in and of itself amount to sufficient minimum contacts in Illinois. *See N. Grain Mktg.*, 743 F.3d at 493 (quoting *Purdue Rsch. Found. v. Sanofi-*

---

[1] In fact, the printout from a website attached to the Opposition as Exhibit 11 indicates, at most, that the persons posting the comments did so from Illinois. It does nothing to establish a connection between Defendants and Illinois. As demonstrated below, even if the testimonials did show work in 2013 by Accruvia for Illinois customers, Athena's claims clearly do not relate to such alleged contacts.

*Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003)); *see also Med. Indus. & Sci. Prods., Inc. v. Jordan Med. Grp.*, No. 21-C-0081, 2021 WL 4583654, at *1 (N.D. Ill. Mar. 16, 2021) (quoting *Ameritech Servs., Inc. v. SCA Promotions, Inc.*, 2000 WL 283098, at *3 (N.D. Ill. Mar. 6, 2000)). Athena wholly fails to address the cases cited by Defendants establishing this fundamental principle and offers no case law to the contrary.

The facts are clear – and undisputed – that the Term Sheet was instigated by Athena and negotiated and executed in El Salvador. (Doc. 13-2, Shaun Dec. ¶¶ 10-12.) That Term Sheet called for the acquisition of Accruvia, a Texas company, and for Shaun to become an executive of Athena upon closing, which never happened. (*Id*. ¶ 19.) Indeed, as indicated by the separate agreement attached to the Complaint and translated for Defendants' Opening Memorandum, Shaun's actual employment at the time was with Athena Holdings El Salvador, Sociedad Anénima de Capital Variable El Salvador ("Athena El Salvador"). (Doc. 13-1.) In the end, the fact that Athena was an Illinois company was entirely fortuitous and irrelevant to the dealings between Accruvia/Shaun and Athena. Thus, under clear Seventh Circuit law, the Term Sheet that is the basis of Athena's claim does not provide a basis for specific jurisdiction over Shaun or Accruvia. *See Johnson v. Hartwell*, 690 F. App'x 412, 414 (7th Cir. 2017) (Where contract for rental of property in Michigan from Michigan company was signed by Indiana resident who received correspondence in and made payments from Indiana, "[t]he contract here established only a 'random' or 'fortuitous' connection with Indiana that was not sufficient to establish personal jurisdiction there.").

Nor does Athena's reliance (Opp. at 8-9) on *Calder v. Jones*, 465 U.S. 783 (1984), for the contention that it was injured in Illinois establish personal jurisdiction. As the Seventh Circuit has recognized:

> The plaintiff's reliance on *Calder* is misplaced. We do not believe that the Supreme Court, in *Calder,* was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff.

*Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985). Indeed, the "express aiming" test employed by the Seventh Circuit "properly focuses attention on whether the defendant intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutionally irrelevant effects of that conduct on the plaintiff." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445 (7th Cir. 2010). Here, the record is completely devoid of any indication that any Defendant intentionally aimed conduct at Illinois. Indeed, the only fiduciary duty alleged in the Complaint arises from Shaun's role as Chief Technology Officer, which as reflected in the record, was with Athena El Salvador, not an entity in Illinois. (Doc. 13-1.) And the Seventh Circuit has squarely rejected as "error" an argument that personal jurisdiction can arise based on the allegation that the defendant "knew that [plaintiff] was an [Illinois] company and could foresee that its misleading emails and sales would harm [plaintiff] in [Illinois]." *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014). Indeed, the Court recognized that "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Second, Athena claims that Accruvia performed work for it and billed it for those services. Of course, as noted in Shaun's declaration and not disputed by Plaintiff, even assuming that work was done for the named Athena entity, that work was not performed in Illinois, but instead was performed in Texas, El Salvador and other locations outside Illinois, and it was paid for by a different entity. (Doc. 13-2, Shaun Dec. ¶¶ 17-18.) Thus, even if relevant, that work, like the Term Sheet itself, does nothing to establish contacts sufficient for the exercise of personal

4

jurisdiction over Shaun and Accruvia in Illinois because contracting with an Illinois resident is not enough. Moreover, Athena's claims in this case do not arise out of that work; it is not the basis for either the breach of contract or fiduciary duty claim. Thus, any contacts related to this other work cannot, as a matter of law, create specific jurisdiction. *See Rogers*, 996 F.3d at 819 (injury must "arise[] out of or relate[] to the defendant's forum-related activities").

Third, although Plaintiff expressly concedes the need for a causal connection between Defendants' Illinois contacts and Plaintiff's claims (Opp. at 12), Plaintiff wholly fails to establish such a connection or even explain how it exists in this case, especially with respect to the testimonials from two purported Illinois residents in 2013 attached as Exhibit 11 to the Opposition. The work apparently referenced in those web postings regarding Accruvia when it was operating under a different name has absolutely no relationship to Athena or to its claims regarding a contract entered into in El Salvador in 2021. To the extent Athena means to imply that such flimsy "contacts" from 2013 – or any of the other contacts identified in the Opposition – would be sufficient to create general jurisdiction, such a contention is entirely without merit. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Finally, Athena makes no effort at all to justify the Court's exercise of personal jurisdiction over Neidy. Because Defendants demonstrated a complete absence of contacts between Neidy and Illinois in their Opening Memorandum (at 7 (Neidy a Texas resident); 9-10 (no basis for specific jurisdiction based on lack of contacts)), Neidy must also be dismissed for lack of personal jurisdiction.

II.     **Athena Has Failed To State A Claim Against Neidy Overton.**

Even if the Court had personal jurisdiction over Neidy (which it clearly does not), she should nonetheless be dismissed because Plaintiff does not state a claim against her. Athena does not dispute the fact that Neidy is not a party to any contract with Plaintiff. Nor has Athena identified a single action or inaction by Neidy upon which a claim against her could be based. Instead, Athena argues that, because Texas is a community property state, Neidy is responsible for Shaun's actions and is an indispensable party to this litigation.[2] (Opp. at 12-14.) Athena's contention is belied both by Texas law and by common sense. Indeed, adopting Plaintiff's approach would mean that spouses in any community property state would always have to be named in any lawsuit that could affect community property. Athena offers no law in support of this novel proposition.

In fact, the Texas Family Code makes it clear that a spouse cannot be liable simply for being a spouse. In Texas, a person is only liable for the actions of her spouse if the spouse acts as an agent for her or if the spouse incurs a debt for "necessaries." Tex. Fam. Code § 3.201. "Necessaries" relate to sustenance (e.g., food, clothing, shelter), *see Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 656 (Tex. 2013), and there is no such debt at issue in this case. Nor has Plaintiff alleged—nor could it allege—that Shaun's actions with respect to Athena were undertaken as the agent for Neidy. Moreover, the concern expressed by Athena that somehow its ability to encumber community property is limited if Neidy is not in the case is also contrary to Texas law. Indeed, the Texas Family Code makes clear that aggrieved plaintiffs can look to community property by virtue of the alleged tortious conduct of one spouse. Tex. Fam. Code

---

[2] If Neidy was truly an indispensable party, the action would have to be dismissed under Fed. R. Civ. P. 19 because, as demonstrated above, the Court lacks personal jurisdiction over Neidy. *See Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999) (if party over whom court lacks personal jurisdiction is found to be indispensable, "the action is subject to dismissal").

6

§ 3.202. Thus, Athena has not stated a claim in any sense against Neidy, she is not a necessary or indispensable party, and the Complaint against her must be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

For the reasons stated above and in Defendants' Opening Memorandum, the Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction over all Defendants. In addition, even if the Court had personal jurisdiction over Neidy Overton, the Complaint fails to state a claim for relief against Neidy, and she must be dismissed under Rule 12(b)(6).

Dated: May 12, 2022  Respectfully submitted:

  /s/ Michael L. Rice
  Holly A. Harrison
  Katie J. Colopy
  Michael L. Rice
  HARRISON LAW LLC
  141 W. Jackson Blvd., Suite 2055
  Chicago, IL 60604
  (t) (312) 638-8776
  (f) (312) 638-8793
  hollyharrison@hlawllc.com
  katiecolopy@hlawllc.com
  mikerice@hlawllc.com

  **Attorneys for Defendants**
  **Shaun Overton, Neidy Overton and ROI**
  **Developers, Inc. d/b/a Accruvia**

## Certificate of Service

The undersigned hereby certifies that, on May 12, 2022, the foregoing Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Complaint was filed via the Court's CM/ECF system, which will provide notice to the following counsel for the parties.

    Ryan M. Cleys
    115 East Irving Park Rd., #936
    Streamwood, Illinois 60107
    Rmcleys@gmail.com

                                      */s/ Michael L. Rice*