UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ATHENA BITCOIN GLOBAL,        )
                                           )
        Plaintiff,               )
                                           )      No. 22 C 1291
        v.                      )
                                           )      Judge Sara L. Ellis
SHAUN OVERTON, et al.,          )
                                         )
        Defendants.          )

## OPINION AND ORDER

Plaintiff Athena Bitcoin Global ("Athena") filed this lawsuit against Defendants Shaun

Overton ("Overton"), Neidy Overton ("Neidy"), ROI Developers, Inc., d/b/a Accruvia

("Accruvia"), and other unnamed corporations, persons, and insurance companies (collectively,

"Defendants") alleging breach of fiduciary duty, breach of contract, fraudulent inducement to

enter a contract, and bad faith dealing stemming from a business relationship that soured.

Athena initially filed this case in the Circuit Court of Cook County's Chancery Division, and

Defendants removed to this Court. Defendants now move to dismiss the complaint under

Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and alternatively, to

dismiss the claims against Neidy under Rule 12(b)(6). Because it lacks personal jurisdiction

over Defendants, the Court grants the motion.

## BACKGROUND[1]

Athena is a Nevada corporation, headquartered in Illinois, that helps the government of

El Salvador implement bitcoin as legal tender. Athena obtains and installs ATM-type machines

---

[1] The Court takes the facts in the background section from Athena's complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

and facilitates hand-held point-of-sale transactions. Accruvia, a software development company owned by Overton, also worked for the El Salvadoran government. Accruvia is a Texas corporation with its principal place of business in Texas. Overton and Neidy also live in Texas.

In September 2021, Overton met Athena's CEO in El Salvador and they began negotiating for Athena's acquisition of Accruvia, with Overton continuing in an executive role at Athena. Athena, Accruvia, and Overton signed a term sheet, but never finalized the deal. The negotiations and signing of the term sheet took place in El Salvador. Overton also signed a Non-Disclosure Agreement that described him as Chief Technology Officer ("CTO") of Athena Holding El Salvador, and he immediately assumed that role. However, the parties never finalized a written employment agreement. Athena paid Overton for work done from either El Salvador or Texas. Overton participated in phone calls with Athena staff but did so from El Salvador or Texas. Accruvia employees or contractors performed work related to Athena from other locations as well, all outside of Illinois.

As Athena's CTO, Overton obtained access to Athena's proprietary and confidential information and used it to harm Athena's business relationship with the El Salvadoran government, with the intent of securing a similar but separate contract for himself and Accruvia. Specifically, Overton told the El Salvadoran government that Athena's software had problems that that he could fix if the government signed a separate contract with Accruvia. Overton also sabotaged Athena by recommending it hire incompetent staff. The El Salvadoran government later lowered its investment in Athena. Athena and Accruvia/Overton dissolved their agreement in November 2021.

Neidy never worked for Accruvia. She had no dealings with any Athena entity and has never been to Illinois.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(2) challenges the Court's jurisdiction over a party. When a defendant raises a Rule 12(b)(2) challenge, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citation omitted). If the Court rules on the Rule 12(b)(2) motion without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* at 392–93; *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In resolving a Rule 12(b)(2) motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint," *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012), and "reads the complaint liberally with every inference drawn in favor of [the] plaintiff," *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). However, if the defendant submits "evidence opposing the district court's exercise of personal jurisdiction, the plaintiff must similarly submit affirmative evidence supporting the court's exercise of jurisdiction." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). In addressing Defendants' motion to dismiss, the Court is not limited to the pleadings. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Therefore, the Court draws the facts from the complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Athena's favor. *Id.* at 782–83. The Court "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff," *GCIU-Emp. Ret. Fund*, 565 F.3d at 1020 n.1, but resolves "any factual disputes in the [parties'] affidavits in favor of the plaintiff," *Felland*, 682 F.3d at 672.

## ANALYSIS

Defendants move to dismiss on the basis that this Court lacks personal jurisdiction. Neidy alternatively moves to dismiss for failure to state a claim because she had no involvement with the business dealings at issue. Because the jurisdiction argument is dispositive, the Court does not consider Neidy's substantive arguments.

A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the constitution and the law of the state in which it sits. *Nucor v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 580 (7th Cir. 1994); Fed. R. Civ. P. 4(e) (federal court sitting in diversity can exercise personal jurisdiction only so far as allowed by the law of the state in which it sits). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction on any basis permitted by the Illinois and United States constitutions. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing 735 Ill. Comp. Stat. 5/2-209(c)). This standard effectively merges the federal constitutional and state statutory inquiries. *N. Grain Mktg*, 743 F.3d at 492.

Depending on the extent of a defendant's contact with Illinois, personal jurisdiction may be either general or specific. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). General personal jurisdiction means that a defendant may be subject to suit in Illinois for any cause of action arising in any place. *Id.* Specific personal jurisdiction is more limited and only exposes the defendant to claims that arise out of the defendant's contacts with Illinois. *Id.* In either case, the Court may only exercise jurisdiction if the contacts establishing that jurisdiction are "such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

## I.      General Personal Jurisdiction

Athena carries the burden to establish jurisdiction. *Curry*, 949 F.3d at 392.  A defendant is subject to general personal jurisdiction if it has "continuous and systemic general business contacts with the forum state." *uBID*, 623 F.3d at 425 (quotation marks omitted) (citation omitted).  The defendant must have "such extensive contacts with the state that [it] can be treated as present in the state for essentially all purposes." *Id.* at 426.  "In determining whether general jurisdiction exists, courts examine the following factors: (1) whether defendants maintain offices or employees in Illinois; (2) whether defendants send agents into Illinois to conduct business; (3) whether defendants have designated an agent for service of process in Illinois; (4) whether defendants advertise or solicit business in Illinois; and (5) the extent to which defendants conduct business in Illinois." *Richter v. INSTAR Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1006 (N.D. Ill. 2009).  General jurisdiction requires a high threshold, and the Court will only find it where a party has engaged in systemic and continuous activity in the forum state such that it approximates physical presence. *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

Here, all factors weigh against general jurisdiction.  Accruvia does not have offices, an agent for service of process, or employees in Illinois.  Overton performed his work for Athena in El Salvador or Texas, and no other Accruvia employees worked in Illinois.  Athena does not present any evidence that Accruvia solicits or advertises for business in Illinois.  Rather, Athena argues that Accruvia did intermittent business with Illinois residents in the past under a different name.  Athena's proof consists of posts on the website of Accruvia's prior incarnation (OneStepRemoved.com), which show positive customer reviews signed with the individual's

name and location, two of which are Illinois.  The customers posted these comments in 2013, eight years before the events alleged in the complaint.  This website shows, at most, *de minimus* dealings far removed in time and context from the present dispute.  *See Richter*, 594 F. Supp 2d at 1006-9 (operation of fully interactive website selling products in Illinois not sufficient to confer general jurisdiction); *GCIU-Emp. Ret. Fund*, 565 F.3d at 1024 ("[T]his court has held that, to be relevant for personal jurisdiction, past contacts should either bear on the substantive legal dispute between the parties or relate to the operative facts of the case.").  Athena has not met its burden to show that Accruvia had continuous and systemic contacts with Illinois.

Similarly, neither Overton nor Neidy can be said to have meaningful long-term connections to Illinois.  Both live in Texas.  Overton never worked in Illinois and has only visited the state twice.  Neidy has never been to Illinois and has not worked for Accruvia or Athena.  Athena has also failed to meet its burden to demonstrate that "it would be fundamentally fair to require [Overton and Neidy] to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Rsch. Found.*, 338 F.3d at 787 (emphasis in original).  As a result, the Court finds that it does not have general jurisdiction over Defendants.

## II.    Specific Personal Jurisdiction

Athena also argues that this Court has specific jurisdiction over Defendants.  To establish minimum contacts that create specific personal jurisdiction, a defendant must have purposefully directed its activities at Illinois or purposefully availed itself of the privilege of conducting business in Illinois, and the alleged injury must arise out of or relate to the defendant's forum-related activities.  *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 819 (7th Cir. 2021).  The Court's exercise of personal jurisdiction over a defendant must also comport with traditional

notions of fair play and substantial justice. *Id.*

### A. Overton and Accruvia

Athena has not met its burden to show that this Court has personal jurisdiction over Overton and Accruvia. The Court considers "whether the conduct underlying the claims was purposely directed at the forum state," and looks at whether Overton or Accruvia engaged in: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 702-03 (citations omitted). Overton, Accruvia, and Athena negotiated and signed the term sheet in El Salvador for business Overton and Accruvia were to conduct in that country. Overton and Accruvia allegedly interfered with Athena's business dealings in El Salvador. The NDA describes Overton as CTO of Athena Holding El Salvador. If Overton worked for Athena outside of El Salvador, he did so from his home in Texas, and all dealings between the parties occurred outside of Illinois. Overton and Accruvia did not purposefully direct any actions at Illinois.

Athena argues that Overton knew (or should have known) that he negotiated with a company based in Illinois, and therefore intentionally harmed the state. However, contracting with an Illinois corporation, without more, fails to satisfy the minimum contacts inquiry. *See Purdue Rsch. Found.*, 338 F.3d at 781 ("contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum"); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot" (emphasis in original)); *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 880 (7th

Cir. 2019) (defendants had no purposeful contact with the state during contract negotiation process). Their contract with Athena cannot be Defendants' only connection with Illinois. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."); *N. Grain Mktg*, 743 F.3d at 495 ("Aside from contracting with and receiving money from this Illinois-based buyer—activities that Greving completed entirely from within the Badger State's borders—Greving has no relevant interaction with Illinois.").

When considering whether the effects of a contract can bring an otherwise out-of-state defendant into the Court's jurisdiction, the Court takes "a highly realistic approach," recognizing "that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 473 (citation omitted) (internal quotation marks omitted). The Court examines the following factors: "(1) who initiated the transaction; (2) where the contract was negotiated; (3) where the contract was formed; and (4) where performance of the contract was to take place." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (citation omitted). Here, Athena approached Overton in El Salvador, where they negotiated and signed the term sheet and NDA. Overton/Accruvia performed approximately one month's worth of work from El Salvador and Texas, and possibly other states (but not Illinois). The "real object" of the transaction was Athena's acquisition of Accruvia and Accruvia's work in El Salvador. *Burger King*, 471 U.S. at 473. These are not the kinds of complex dealings or protracted negotiations that might support personal jurisdiction. *See, e.g.*, *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761–64 (7th Cir. 2008) (finding personal jurisdiction when Illinois

8

plaintiff "incurred a great deal of expense on the behalf of" the defendant over a six-month

project development period, despite the fact that the anticipated project was not located in

Illinois and the parties never finalized their agreement). Athena has not shown that Defendants

purposefully availed themselves of Illinois such that it would be fair to bring them into this

Court.

Athena also argues that Overton harmed it in Illinois by influencing hiring decisions and

accessing its confidential information. "Where the injury alleged is economic in nature, rather

than physical or emotional, however, the plaintiff needs to show more than the harm was felt in

Illinois, the plaintiff must also show an intent to affect an Illinois interest." *Hyperquest, Inc. v.*

*NuGen I.T., Inc.*, 627 F. Supp. 2d 884, 891 (N.D. Ill. 2008) (citation omitted) (internal quotation

marks omitted). Athena does not plead any link between these activities and Illinois beyond

general assertions about the effect on Athena itself, and that is not enough for personal

jurisdiction. *See id.* at 894 ("This argument, in essence, is an impact theory of minimum

contacts, which mistakenly assumes that because defendants' alleged tortious conduct would be

felt in Illinois, the defendants *must have* acted with an intent to affect an Illinois interest. But

this theory fails because it is too speculative to show the requisite intent on behalf of the

Defendants to affect an Illinois interest." (emphasis in original)); *see also Rogers*, 996 F.3d at

819 ("The question is not whether the plaintiff experienced a particular injury or effect in the

forum state but whether the defendant's conduct connects him with the forum in a meaningful

way").

Athena also argues that Overton acted as its CTO for a little over a month, and because

Athena is located in Illinois, this establishes minimum contacts. However, again, "[t]he mere

fact that defendant's conduct affected plaintiffs with connections to the forum State does not

9

suffice to authorize jurisdiction." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014) (citation omitted) (internal quotation marks omitted) (alteration omitted). Overton submitted a declaration stating that, upon closing of the deal (which never occurred), he was to become an employee of Athena Global, and that he was never paid any wages or salary by Athena. The signed NDA titles Overton as CTO for Athena El Salvador. Overton further states that he never discussed having an office in Illinois or doing any work for Athena in Illinois and that he never worked in Illinois. Athena has not provided evidence to show that Overton's work as CTO justifies this Court's exercise of personal jurisdiction over him. *See Schenk v. Knightscope, Inc.*, No. 17 C 7529, 2018 WL 1726425, at *3 (N.D. Ill. Apr. 10, 2018) (even when employee worked remotely from Illinois, no personal jurisdiction: "The contract provides for plaintiff to work remotely, meaning he could live and work wherever he chose. It is simply fortuitous that he lives in Illinois. His residency was unrelated to his employment duties[.]"); *Shott v. Rush Univ. Med. Ctr.*, No. 21-CV-1243-JPS, 2022 WL 1576814, at *3 (E.D. Wis. Apr. 28, 2022) (same).

Athena has not met its burden to show that this Court has personal jurisdiction over Overton and Accruvia.

### B. Neidy

Similarly, the Court does not have personal jurisdiction over Neidy. Neidy only appears in the complaint as Overton's wife. Neidy submitted a declaration attesting that she had no dealings with Athena and that she never worked for Accruvia. Instead, Athena argues that Neidy has a marital interest in Accruvia, which Athena calls a "conjugal legal partnership," that makes her an indispensable party. Without more, a marital interest does not establish personal jurisdiction over a defendant's spouse. *See Fid. & Deposit Co. of Md. v. Slurry Sys., Inc.*, 235 F.

Supp. 3d 1035, 1037–38 (N.D. Ill. 2016) (finding defendant's spouse's "marital interest" in the defendant's company insufficient to establish minimum contacts). Neidy has no ownership interest in Accruvia or any other kind of economic connection with Athena or Accruvia that could possibly justify jurisdiction here. *Cf. Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137 (6th Cir. 1982) (in community property state, finding personal jurisdiction when spouse signed guaranty creating ownership interest).

Athena argues that Neidy, based on this purported economic interest, is an indispensable party under Federal Rule of Civil Procedure 19. The purpose of Rule 19 is to "permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). However, when the Court does not have personal jurisdiction over a defendant, as here, joinder is not possible. *See Burger King Corp. v. Am. Nat'l Bank & Tr. Co. of Chicago*, 119 F.R.D. 672, 674–75 (N.D. Ill. 1988) (citing Rule 19(a), explaining a necessary party must be joined unless doing so not feasible because the Court lacks personal jurisdiction over the party or doing so would "destroy the court's subject matter jurisdiction"). And Athena does not address Rule 19(b), which requires that the Court dismiss the case when it lacks jurisdiction over a necessary party, unless the Court cannot, "in equity and good conscience" proceed absent that party. *See Moore*, 901 F.3d at 1447; *Burger King*, 119 F.R.D. at 675. It is not the Court's job to make arguments or find supporting case law for the parties. *See Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006) (it is the "advocate's job . . . to make it easy for the court to rule in his client's favor").

Athena has not met its burden to show that this Court has personal jurisdiction over Neidy. Because the jurisdictional question is dispositive, the Court need not address Neidy's

11

alternative arguments for dismissal under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss [11]. The

Court dismisses the complaint for lack of personal jurisdiction and terminates this case.


Dated: August 9, 2022

                                                       SARA L. ELLIS
                                                       United States District Judge